UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BEEPER VIBES, INC.,          Case No. 3:10-cv-473

    Plaintiff,

                                     Judge Timothy S. Black

vs.

SIMON PROPERTY GROUP, INC., *et al.*,

    Defendants.

**ORDER THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(Doc. 30) IS GRANTED IN PART AND DENIED IN PART**

This civil action is before the Court on Defendants'[1] motion for summary judgment (Doc. 30) and the parties' responsive memoranda (Docs. 44, 45).

## I.    BACKGROUND FACTS

Plaintiff brought this action asserting several causes of action based on alleged fraudulent representations upon which it claims to have relied in entering into six leases in Florida. Defendants move for summary judgment in their favor dismissing the claims asserted by Plaintiff and for judgment in their favor with respect to their counterclaims for damages on unpaid leases.

## II.    UNDISPUTED FACTS[2]

1.    Plaintiff Beeper Vibes, Inc. is an Ohio corporation that operates approximately 25 Verizon Wireless-carrying cell phone stores at mall kiosks and other locations.

---

[1] Defendants include Simon Property Group, Inc., Boynton-JCP Associates, Ltd., Coral-CS/Ltd. Associates, SDG Dadeland Associates, Inc., Keystone-Florida Property Holding Corp., and Sunrise Mills Limited Partnership (collectively, "Defendants").

[2] *See* Doc. 31 and 44, Ex. 1.

(*See* Doc. 30, Ex. 2 at 170-71).

2. Plaintiff operates locations in Ohio, Indiana, Kentucky, and West Virginia. (*Id.* at 169).

3. In early 2010, Plaintiff had discussions with representatives of Verizon in which Verizon suggested that Plaintiff expand its operations into the Florida market. (*Id.* at 183-84).

4. Plaintiff entered into a five-year lease with Defendant Boynton-JCP Associates, Ltd. ("Boynton") on or about July 9, 2010 for Kiosk Space No. KI09 in the Boynton Beach Mall in Boynton Beach, Florida. (Doc. 1 at ¶ 15(a); Doc. 30, Ex. 3).[3]

5. Plaintiff also entered into a five-year lease with Defendant Coral-CS/Ltd. Associates ("Coral") on or about July 9, 2010 for Kiosk Space No. KI10 in the Coral Square Mall in Coral Springs, Florida. (Doc. 1 at ¶ 15(b); Doc. 30, Ex. 4).

6. Plaintiff also entered into a five-year lease with Defendant SDG Dadeland Associates, Inc. ("Dadeland") on or about October 5, 2010 for Kiosk Space No. KI26 in the Dadeland Mall in Miami, Florida. (Doc. 1 at ¶ 15(c); Doc. 30, Ex. 5).[4]

7. Plaintiff also entered into an eleven-month lease with Defendant Keystone-Florida Property Holding Corp. ("Keystone") on or about July 20, 2010 for Kiosk Space No, 8 in the Galleria Fort Lauderdale Mall in Fort Lauderdale, Florida. (Doc. 1 at ¶ 15(d); Doc. 30, Ex. 6).[5]

8. Plaintiff also entered into a fifteen-month lease with Defendant Sunrise Mills Limited Partnership ("Sunrise") on or about September 16, 2010 for Kiosk Space No. 2011A in the Sawgrass Mills Mall ("Sawgrass") in Sunrise, Florida. (Doc. 1 at ¶ 15(e); Doc. 30, Ex. 7).

---

[3] With respect to paragraphs 4-9, Plaintiff admits that the lease was signed by a representative of Beeper Vibes, but states that Beeper Vibes was fraudulently induced into executing the lease.

[4] Plaintiff maintains that it did not take possession of the Dadeland Kiosk.

[5] Plaintiff maintains that it gave notice of cancellation in accordance with the terms of the lease.

9. Plaintiff also entered into another fifteen-month lease with Sunrise on or about September 16, 2010 for Kiosk Space No. 8008 in Sawgrass. (Doc. 1 at ¶ 15(f); Doc. 30, Ex. 8).

10. The Boynton, Coral, and Dadeland Leases use the same lease form and are governed by "the laws of the State where the Shopping Center is located." (*Compare* Doc. 1, Ex. A, with Exs. B and C; *see also id.* at § 39).[6]

11. The Keystone Lease and the two Sunrise Leases use the same lease forms, and they are to be "construed and enforced in accordance with the laws of the State where the Shopping Center is located." (*Compare* Doc. 1, Ex. D, with Exs. E and F; *see also id.* at § 34).[7]

12. Each of the Boynton, Coral, and Dadeland Leases provides that it is a breach of the Lease if Plaintiff "abandons or vacates" the leased premises. (*See* Doc. 30, Exs. B, C, and D at § 26(f)).[8]

13. Likewise, each of the Keystone and Sawgrass Leases provides that it is a breach of the Lease if Plaintiff "shall abandon the Space." (*See* Doc. 30, Exs. E, F, and G at § 21).[9]

14. Each of the Boynton, Coral, and Dadeland Leases provides that it contains "all of the agreements of the parties hereto" and that "neither Landlord nor any broker has made any representations to, or agreements with, Tenant which are not contained in this Lease." (Doc. 30, Exs. B, C, and D at § 35).

---

[6] Plaintiff maintains that the Boynton, Coral, and Dadeland Leases contain the following provision: "Section 39. Applicable Law. This lease shall be construed under the laws of the State where the Shopping Center is located."

[7] Plaintiff maintains that the Keystone Lease and two Sunrise Leases state that they are to be "construed and enforced in accordance with the laws of the State where the Shipping Center (sic) is located."

[8] Plaintiff maintains that the lease provides for default in the event that the subject space is abandoned for a period of ten days.

[9] Plaintiff maintains that the lease provided for default in the event of abandonment for three days in a sixty day period.

15. Likewise, the Keystone and Sawgrass Leases provide that there are "no agreements between the parties which are not contained herein, and Tenant has not received or relied on any representations from Landlord or Landlord's agents." (Doc. 30, Exs. E, F, and G at § 26).[10]

16. Also, in the Keystone and Sawgrass Leases, Plaintiff acknowledged that it "is entering into this Lease based solely on its own investigation and not based on any representations or warranties of Landlord or its representatives." (*See* Doc. 30, Exs. E, F, and G at § 2(c)).[11]

17. The Boynton Lease provides, at section 19, that "Landlord, its agents and employees, shall not be liable for, and Tenant waives all claims for, damage, including but not limited to consequential damages, to person, property or otherwise, sustained by Tenant" when that damage results "from any accident or occurrence in or upon any part of the Shopping Center," including damages resulting from either "damage to or loss by theft or otherwise of property of Tenant or others" or "acts or omissions of persons in the Premises . . . or any other persons." (Doc. 30, Ex. B at § 19).

18. Plaintiff moved into the various locations between July and October 2010, with the exception of the kiosk at the Dadeland Mall in Miami. (Doc. 30, Ex. 2 at 69).

21. When Plaintiff's employees attempted to remove inventory from the Boynton Beach Mall, the police put a stop to the removal attempt. (Doc. 30, Ex. 2 at 246).[12]

22. Plaintiff's Vice President, Mr. Belvo, learned of this second-hand from another employee. (Doc. 30, Ex. 2 at 247).[13]

---

[10] Plaintiff maintains that the Leases speak for themselves.

[11] Plaintiff maintains that the Leases speak for themselves.

[12] Plaintiff maintains that it attempted to remove its property from the Boynton Beach Mall kiosk and states that the Boynton Beach police, in the employment of Boynton, attempted to remove the inventory.

[13] Plaintiff maintains that Mr. Belvo was directly involved with Boynton's unlawful attempts to convert the property of Beeper Vibes.

27. There is no longer a kiosk at either Boynton Beach or Coral Square. (Doc. 30, Ex. 9 at ¶¶ 5, 8).[14]

30. Sunrise was able to recoup all of its losses in connection with Plaintiff's breach of the lease for Kiosk 8008. (*See* Doc. 30, Ex. 9 at ¶ 14).[15]

32. Shortly after Plaintiff moved into two of the malls – Boynton Beach and Coral Square – Best Buy Mobile, a competitor of Plaintiff, also opened locations at those malls. (Doc. 1 at ¶ 17).

33. Mr. Belvo testified that he asked Simon employee Robert "Rocky" McMurtray "if there were any other Verizon dealers coming in, if there were any big discount dealers, any big dealers at all, is there any other dealers coming in that I would need to know about prior to making a decision whether we would enter this market or not." (Doc. 30, Ex. 2 at 53).

34. Mr. McMurtray allegedly "said there were none." (*Id.*)

35. Mr. McMurtray testified that "the question never came up." (Doc. 30, Ex. 10 at 78).[16]

36. After the alleged discussion between Mr. McMurtray and Mr. Belvo, Plaintiff sent an e-mail to Mr. McMurtray indicating that for the Boynton Beach and Coral Square locations, Plaintiff wanted to limit the rent amounts to $70,000 and $75,000, respectively. (Doc. 30, Ex. 2 at 180-81).

38. The e-mail did not indicate that Plaintiff would have refused to enter the Florida market if it had been informed that a competitor like Best Buy

---

[14] Plaintiff maintains that since Boynton and Coral took possession of the spaces previously occupied by Beeper Vibes, that these spaces have been occupied as recently as November 2012.

[15] Plaintiff maintains that Sunrise financially benefitted from Beeper Vibes departure from Kiosk Space 8008.

[16] Plaintiff admits that this testimony is contained in Mr. McMurtray's deposition. However, Plaintiff maintains that this testimony is directly contrary to the testimony of both Belvo and Langford and therefore a factual dispute exists on this point.

Mobile might enter one of more of the proposed locations.  (*Id.*)[17]

39. After Plaintiff had been provided draft copies of the Boynton and Coral Leases, Plaintiff made several comments to them but did not request that the Leases provide guarantees that the malls were not in negotiations with competitors.  (Doc. 30, Ex. 11 at 79-80; Doc. 30, Ex. 2 at 154 (conceding that he never requested that the representations be reduced to writing)).[18]

40. Over two months prior to Plaintiff executing any of the leases at issue in this case, Sunrise representative Karen Schubert sent Mr. Langford an e-mail to which a map of the Sawgrass mall was attached.  (Doc. 30, Ex. 12 at 34).

44. Mr. Langford, Plaintiff's former employee, conceded that there have been Verizon corporate stores and Beeper kiosks at certain other malls.  (*Id.* at 49).[19]

45. There were at least four locations – Dayton Mall in Dayton, Ohio, Polaris Mall and Eastland Mall in Columbus, Ohio, and another mall in Cincinnati – where Plaintiff operated a location where a Verizon corporate store was in the mall as well.  (*Id.* at 49; Doc. 30, Ex. 2 at 235-36).

46. Mr. McMurtray testified that he had no role in any negotiations with Best Buy Mobile.  (Doc. 30, Ex. 10 at 72).[20]

---

[17] Plaintiff maintains that the e-mail makes it perfectly clear that it was a requirement of Beeper Vibes that the malls not have direct or indirect competitors like Best Buy Mobile (which sells Verizon Wireless service and products).

[18] Plaintiff admits that the leases do not have an exclusivity provision.

[19] Plaintiff admits that there were other "Verizon corporate stores" in malls in which Plaintiff was present in markets where its brand name had been established (i.e. Ohio).

[20] Plaintiff maintains that McMurtray testified that he was aware of the negotiations as early as October 2009.

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

### IV. ANALYSIS

#### A. Choice of Law

Plaintiff claims that Ohio law controls this civil action.

However, each of the Leases at issue contains a choice-of-law provision that requires the application of Florida law. (Doc. 30, Ex. 1 at 4 *citing* leases) (the leases are governed by "the laws of the state where the Shopping Center is located.").

Moreover, even if the Court were to look to the Restatement (Second) of Conflicts

of Law, as Plaintiff argues, the Restatement also points to Florida law as the applicable law in this action.

Section 148 of the Restatement (Second) of Conflicts of Law governs choice-of-law for fraud claims and provides: "when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship." Rest. 2d. Confl. § 148(1). The Restatement provides further that "when the plaintiff's action in reliance took place in the state where the false representations were made and received," that state's law should apply.

Here, Plaintiff's alleged actions in reliance on Defendants' alleged fraud did not take place in Ohio, they took place in Florida. The only connection that this case has with Ohio is that Plaintiff's offices, and one of the offices of its counsel, are located here. Plaintiff alleges that its "receipt" of e-mails and telephone calls in Ohio is sufficient to satisfy Section 148, but it is not. Section 148 requires action in reliance on a misrepresentation, and Plaintiff fails to identify any action that it took in Ohio in response to the alleged misrepresentations. All of Plaintiff's actions were in Florida.[21]

Therefore, the claims in this action are governed by Florida law.

---

[21] Plaintiff alleges meetings in Florida during which it was supposedly misled into entering the leases. (Doc. 44 at 6-7, 11-12). Plaintiff further alleges that, in reliance on the supposed misrepresentations, it flew people down to Florida and "open[ed] a corporate office in Florida." (*Id.* at 8-9).

B.  **Fraudulent Inducement**

In order to state a claim for fraud in the inducement, plaintiff must allege: (1) that the defendant misrepresented a material fact; (2) that the defendant knew or should have known that the statement was false; (3) that the defendant intended that the representation would induce the plaintiff to enter into a contract or business relation; and (4) that the plaintiff was injured by acting in justifiable reliance on the misrepresentation. *Jankovich v. Bowen*, 844 F. Supp. 743, 747 (S.D. Fla. 1994).[22]

When the "fraud occurs in connection with misrepresentations, statements or omissions which cause the complaining party to enter into a transaction, then such fraud is fraud in the inducement and survives as an independent tort. *Allen v. Stephan Co.*, 784 So. 2d 456, 457 (Fla. App. 2000). If a lease is procured by fraud and misrepresentation as to a material fact, the truth or falsity of which is known only to the lessor, then such fraudulent misrepresentation vitiates every part of the lease contract. *Oceanic Villas, Inc. v. Godson*, 4 So. 2d 689 (Fla. 1941).

Claims for fraudulent inducement are barred when the alleged misrepresentation explicitly contradicts an unambiguous provision in a written contract. *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286 (M.D. Fla. 2009). Therefore, the statements or

---

[22] When a party claims that it was fraudulently induced to enter into a contract that contains a choice of law provision, as do the leases here, the fraudulent inducement claim is governed by the choice of law provision as well because such claims are "closely related to the performance of the contract." *Jewell Coke Co., LP v. ArcelorMittal USA, Inc.*, 756 F. Supp. 2d 858, 863 (N.D. Ohio 2010). Accordingly, Florida law governs Plaintiff's claims.

alleged misrepresentations made to induce an individual to enter a contract, if later contained within the terms of the actual contract, cannot constitute a basis on which to bring a fraud claim. *Rosa v. Amoco Oil Co.*, 262 F. Supp. 2d 1364 (S.D. Fla. 2003) (applying Florida law). When the contract itself includes a clear and unambiguous non-reliance provision, as in the instant case, Plaintiff's fraudulent inducement claim fails. Here, the Leases at issue contain the following language:

> This Lease contains all of the agreements between the parties hereto, and it may not be modified in any manner other than by agreement in writing signed by all the parties hereto or their successors in interest. The terms, covenants and conditions contained herein shall inure to the benefit of, and be binding upon, Landlord and Tenant and their respective successors and assigns, except as may be otherwise expressly provided in this Lease. Tenant acknowledges that neither Landlord nor any broker has made any representations to, or agreements with, Tenant which are not contained in this Lease.

(Doc. 30, Ex. 3 at § 35). Therefore, any alleged reliance upon an oral representation outside of the contract is legally unjustified. *White Const. Co., Inc. v. Martin Marietta Materials, Inc.*, 633 F. Supp. 2d 1302 (M.D. Fla. 2009). Reliance on fraudulent representations is unreasonable as a matter of law under such circumstances. *Topp, Inc. v. Uniden Am. Corp.*, 513 F. Supp. 2d 1345 (S.D. Fla. 2007).

The Leases directly negate Plaintiff's fraud in the inducement claim by affirmatively stating that no statements outside the contract were relied upon. Accordingly, Plaintiff's fraud in the inducement claim fails as a matter of law.

### C.     Unjust Enrichment

Plaintiff maintains that it paid Defendant rent that it would not otherwise have paid in the absence of Mr. McMurtray's and Simon's mall managers fraudulent statements. Accordingly, Plaintiff argues, under these circumstances, it would be inequitable for the Defendants to retain these payments and thereby profit from Mr. McMurtray's and Simon's fraudulent conduct.

To establish a cause of action for unjust enrichment, plaintiff must show that "the circumstances are such that it would be inequitable for the defendant to retain the benefit [of receiving rents] without paying fair value for it." *Della Ratta v. Della Ratta*, 927 So.2d 1055, 1059 (Fla. App. 2006). Unjust enrichment is not available when it is proven that an express contract exists. *See, e.g., Williams v. Bear Stearns & Co.*, 725 So.2d 397, 399 (Fla. App. 1998). "It is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter." *Kovtan v. Frederiksen*, 449 So.2d 1, 1 (Fla. App. 1984).

Plaintiff's argument for unjust enrichment is premised only on the alleged invalidity of the Leases. However, because each of the Leases is valid, as explained in Section IV.B, *supra*, the unjust enrichment claim fails as a matter of law.

### D.     "Good Faith" Claim

A claimant asserting a cause of action for breach of the implied covenant of good faith and fair dealing must allege a failure or refusal to discharge contractual

-11-

responsibilities, prompted not by an honest mistake, bad judgment, or negligence; but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party, threrby depriving that party of the benefits of the agreement. *Mount Sinai Med. Cty. of Greater Miami v. Heidrick*, 329 F. Supp. 2d 1309, 1313 (S.D. Fla. 2004). In Florida, a party cannot assert an action for breach of the implied covenant of good faith and fair dealing without also alleging breach of an express term of the underlying contract. *See, e.g., Hosp. Corp. of Am. v. Florida Med. Ctr., Inc.*, 710 So.2d 573, 575 (Fla. App. 1998). While "every contract contains an implied covenant of good faith and fair dealing" under Florida law, a breach of this covenant standing alone, does not create an independent cause of action. *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005).

Plaintiff fails to identify a specific provision of the lease that Defendants breached. Thus, such a claim cannot be maintained "in the absence of a breach of an express term of a contract." *Cox v. CSK Intermodal, Inc*., 732 So. 2d 1092, 1097 (Fla. App. 1999).

### E. Declarations

Plaintiff has requested eight separate declarations from the Court, including whether the Leases are enforceable, whether Plaintiff defaulted on its obligations, and whether Defendants are entitled to damages and in what amounts. (Doc. 1 at ¶¶ 37(a)-37(h)).

Under Florida law, "[a]ny person claiming to be interested or who may be in doubt about his or her rights under a [contract] may have determined any question of construction or validity arising under such [contract] and obtain a declaration of rights, status, or other equitable or legal relations thereunder." Fla. Stat. § 86.021. However, "[a] court must dismiss a claim for declaratory judgment if it is duplicative of a claim for breach of contract and, in effect, seeks adjudication on the merits of the breach of contract claim." *Miami Yacht Charters, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 11-21163-CIV. 2012 U.S. Dist. LEXIS 57041,at *2 (S.D. Fla. Apr. 24, 2012).

Plaintiff's claims for declarations all relate to the Leases, including their enforceability, performance, default, and damages, so they are duplicative of Plaintiff's fraudulent inducement claim and Defendants' counterclaims. Accordingly, the Court declines to issue any declarations.

  **F. Conversion**

Under Florida law, conversion is "an act of dominion wrongfully asserted over another's property inconsistent with his ownership of it." *Advanced Surgical Technologies, Inc. v. Automated Instruments, Inc.*, 777 F.2d 1504, 1507 (11th Cir. 1985). To succeed on a civil conversion claim under Florida law, the plaintiff must prove by a preponderance of the evidence: (1) a right to the property; (2) a demand for the return of the property; and (3) defendants' refusal to return the property. *In re PSI Indus., Inc.*, 306 B.R. 377 (S.D. Fla. 2003).

Plaintiff maintains that Boynton wrongfully asserted dominion over Plaintiff's assets and personal property at the Boynton Beach Mall. Plaintiff further submitted evidence that it suffered monetary harm as a direct and proximate result. However, the evidence demonstrates that it was the Boynton Beach Police Department, not any Boynton employee, that prevented Plaintiff from removing its inventory. Therefore, there are no facts that support an action for conversion against any of the named Defendants.

Moreover, the Boynton Lease provides that "Landlord, its agents and employees, shall not be liable for, and Tenant waives all claims for, damage, including but not limited to consequential damages, to person, property or otherwise, sustained by Tenant . . . from any accident or occurrence in or upon any part of the Shopping Center," including damages resulting from either "damage to or loss by theft or otherwise of property of Tenant or others" or "acts or omissions of persons in the Premises . . . or any other persons." (Doc. 30, Ex. 3 at § 19). Therefore, Plaintiff agreed to waive any cause of action for injury to its property interests as a result of conduct by Boynton or any other person, so it cannot prevail on a claim that its property interests were injured through a conversion. Accordingly, Plaintiff's claim for conversion fails as a matter of law.

### G. Counterclaims

Finally, Defendants argue that in light of the fact that the Leases are all enforceable and were not fraudulently induced, Plaintiff cannot provide the Court with any reason why Plaintiff should not be held liable for the damages suffered by Defendants as a result of Plaintiff's breaches.

The Court finds that, on the current record, there are disputed issues of material fact regarding the damages owed on each lease. For example:

### 1. *Keystone lease*

Plaintiff maintains that it terminated the Keystone lease in accordance with Section 3 of the Agreement. Specifically, that it "may, at any time during the term of the Lease, in its sole discretion and with or without just cause, elect to terminate the Lease . . . upon sixty (60) days advance written notice to (Keystone)." On or about November 24, 2010, Plaintiff forwarded to Keystone-Florida Holding Corporation a letter by overnight mail terminating the lease. (Doc. 44, Ex. 5 at ¶ 2). Therefore, Keystone's damages are limited by this provision.

### 2. *Constructive Evidence*

On November 23, 2010, Plaintiff received letters from the Defendants instructing it to remove its possessions from the subject locations. (Doc. 44, Ex. 5 at 3). Plaintiff claims that at the time Defendants took possession of the locations (November 17, 2010), Plaintiff was not in breach of the Leases, had paid all charges for the month of November 2010, and was otherwise in full compliance with the terms of the Leases.

Defendants maintain Plaintiff "abandoned" the locations. However, the Boynton, Coral, and Dadeland leases all provide that the premises is only "abandoned" in the event that the tenant "vacates or fails to do business for a period of ten (10) days." (*Id*. at § 26). The Boynton Beach and Coral Square leases required Plaintiff to remove its possessions

prior to the expiration of the ten day period. However, Defendants allegedly waited less than a day to retake possession. With respect to the Dadeland Mall, Dadeland allegedly took possession of the premises and ordered Plaintiff to remove its possessions prior to even tendering possession. The leases for Sawgrass Mills and Galleria claim in accordance with Section 23 that it is a breach of lease in the event that the location is not open for business more than three days in any 60 days period. Again, the malls allegedly did not wait for this to occur prior to retaking possession. (Doc. 44, Ex. 5) ("It is the understanding of this office [Beeper Vibes] that your company has taken possession of the above leasehold as of November 17, 2010).

Defendants maintain that Plaintiff's Vice President and corporate representative testified that it had left all of its leased spaces in November 2010, and by abandoning the leasehold premises, Plaintiff gave the Defendants immediate claims for breach of the Leases. (Doc. 30, Ex. 2 at 95).[23] The Court finds that this testimony is insufficient to support a finding that Defendants had an "immediate claim" for breach of the Leases, because it is unclear what date specific Plaintiff "left all of these spaces." (*Id*.) Accordingly, the Court cannot calculate whether Plaintiff failed to do business for the requisite number of days under the contract in order for Defendants to consider the

---

[23] Defendant maintains that Plaintiff breached the contract by anticipatory repudiation. "An anticipatory breach of contract occurs before the time has come when there is a present duty to perform as the result of words or acts evincing an intention to refuse performance in the future." *Alvarez v. Rendon*, 953 So. 2d 702, 709 (Fla App. 2007). "Such a repudiation may be evidenced by words or voluntary acts but the refusal must be distinct, unequivocal, and absolute." *Mori v. Matsushita Elec. Corp. Of Am.*, 380 S. 2d 461, 463 (Fla App. 1980).

premises abandoned.  Moreover, there is insufficient evidence to support a finding that Plaintiff breached the Leases by anticipatory repudiation.

### 3. *Defendants concealed rental income*

Next, Plaintiff maintains that Defendants tried to conceal the amount of rental income they received, and therefore created a material issue of fact as to how much revenue they generated from the use of the subject spaces following their removal of Beeper Vibes.  For example, Defendants allege rent was due for the Boynton Beach location, but admit they cannot lease the space due to a lease restriction.  Additionally, despite Defendants' representation that they had not re-rented certain subject locations, Plaintiff observed the following: at the Boynton Beach Mall a jewelry dealer ("Silver Coast Central") was located on the space previously occupied by Plaintiff (Doc. 44, Ex. 2 at ¶ 4(a)); at the Coral Square Mall a college ("Florida Career College, School of Business") was located on a portion of the space operating a small stand advertising its educational opportunities  (*Id.* at ¶ 4(b)); at the Dadeland Mall there was a remote control toy vendor ("RC Toys") on the space that was the subject of the lease (*Id.* at ¶ 4(c)); and at the Sawgrass Mills Mall, there was a gold dealer ("Au-Oro") located on one of the two spaces occupied by Plaintiff and a luggage dealer on the other space (*Id.* at ¶ 4(d)).

Accordingly, the Court finds that, on the current record, there are disputed issues of material fact as to the damages owed for Plaintiff's breach of the aforementioned Leases.  Moreover, other than the declaration of Nathan Patterson, Defendants fail to

explain the amounts owed on the Leases.  (Doc. 30, Ex. 9).  Specifically, the Court finds that the declaration is vastly insufficient to make any damage findings, as it fails to clearly evidence the essential facts including: date of breach, term of the lease, amount of the lease, mitigation damages, and associated dates.[24]

## V.   CONCLUSION

Accordingly, for the foregoing reasons, Defendants' motion for summary judgment (Doc. 30) is **GRANTED IN PART** and **DENIED IN PART**.  Specifically:

1. Defendants' motion for summary judgment on Plaintiff's claims for fraudulent inducement (Count I), unjust enrichment (Count II), breach of implied covenant of good faith and fair dealing (Count III), declaratory judgment (Count IV), and conversion (Count V) is **GRANTED** and Plaintiff's complaint is therefore **DISMISSED**;

2. Defendants' motion for summary judgment on its counterclaims for money judgments on each of the leases (Boynton Lease (Count I), Coral Lease (Count II), Keystone Lease (Count III), Sunrise Lease (Count IV), Sunrise II Lease (Count V), and Dadeland Lease (Count VI)) is **DENIED**; and

3. This case shall proceed to trial on Defendants' counterclaims, unless Defendant moves forthwith for leave to file a new motion for summary judgment on the counterclaims (if the relevant facts are undisputed and can be placed before the Court).

4. Accordingly, **this case is set for status conference by telephone on 4/11/13 at 12:00 p.m.  COUNSEL SHALL TIMELY CALL:** 1-888-684-8852; Access Code: 8411435#; Security Code: 123456#, and wait for the Court to join the conference.

---

[24] "[J]udges are not like pigs, hunting for truffles that might be buried in the record." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

**IT IS SO ORDERED.**

Date:  4/2/13                                                                      *s/ Timothy S. Black*
                                                                                            Timothy S. Black
                                                                                            United States District Judge